**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**KIMBERLY BRACEY**                                              **PLAINTIFF**

**v.**                           **CIVIL ACTION NO.: 3:25-cv-258-GHD-JMV**

**RUST COLLEGE AND MICHAEL HARPE**                  **DEFENDANTS**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff Kimberly Bracey, by and through undersigned counsel, and respectfully submits this Response to Defendants' Motion to Dismiss [Doc. 22], and in support thereof would show unto the Court as follows:

**I. INTRODUCTION**

Defendants' Motion to Dismiss should be denied as Plaintiff has sufficiently pled facts to support her claims. Alternatively, Plaintiff requests the ability to amend her complaint should the Court determine additional facts need to be pled.

**II. BACKGROUND FACTS.**

Plaintiff Kimberly Bracey was hired by Defendant Rust College on January 9, 2023, as Project Director for the federally funded TRIO Upward Bound programs and was later promoted to Executive Director effective November 1, 2023. In this capacity, Plaintiff was responsible for overseeing compliance with federal grant guidelines and reported directly to Defendant Michael Harpe, Vice President for Student Engagement, and to Rust College's President, Dr. Robert Dixon.

Throughout her employment, Plaintiff repeatedly raised concerns to college leadership regarding suspected fraudulent misuse of federal funds provided to the TRIO program. Specifically, Plaintiff disclosed irregular and excessive drawdowns of federal funds, improper personnel payments resulting in double charges, conflicts of interest in fund recipients, unauthorized reallocations of funds between federal grant programs without her or Defendant Harpe's knowledge or consent, and misrepresentations of TRIO's federal obligations to the Department of Education.

On April 30, 2025, Plaintiff submitted a formal memorandum to President Dixon detailing concerns about potential violations of federal grant regulations, including discrepancies in the use of TRIO funds. On May 5, 2025, Plaintiff emailed Defendant Harpe formally documenting her concerns about misappropriation of funds within the TRIO Upward Bound programs and her intent to file a formal complaint with Human Resources to ensure a full review and protect program integrity.

On May 20, 2025, Plaintiff emailed Trustee Ward, Chair of the Student Affairs Committee, describing the CFO's unauthorized negotiations with parents and misrepresentations of TRIO's federal obligations, characterizing these actions as "not just improper—it is unlawful under TRIO guidelines" and warning of immediate audit risk. That same day, Defendant Harpe sent a letter to President Dixon recommending Plaintiff's termination, falsely alleging that Plaintiff had mismanaged federal funds.

On May 22, 2025, Plaintiff received a letter from President Dixon informing her that her tenure as Executive Director would end effective May 29, 2025. Plaintiff's termination followed closely on the heels of her protected disclosures and occurred without any formal performance review or investigation into her allegations.

### III. STANDARD OF REVIEW

Under Rule 12(b)(6), a motion to dismiss should only be granted if it is clear that the plaintiff can prove no set of facts that would entitle her to relief. Fed. R. Civ. Pro. 12(b)(6). At this stage of the proceedings, all of Plaintiff's allegations must be taken as true. If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present pertinent material. Fed. R. Civ. Pro. 12. In that case, the procedural safeguards of Rule 56 must be observed. *Darlak v. Bobear,* 814 F.2d 1055, 1064 (5th Cir. 1987).

### IV. ARGUMENT

**A. Wrongful Termination Claim**

Mississippi generally adheres to the employment at-will doctrine, which provides that "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Harris v. Miss. Valley State Univ.,* 873 So. 2d 970, 986 (Miss. 2004). However, the Mississippi Supreme Court has carved out a narrow public policy exception to this doctrine in McArn v. Allied Bruce-Terminix Co.

The McArn exception allows an at-will employee to sue for wrongful discharge in two specific circumstances: (1) when an employee refuses to participate in an illegal act, or (2) when an employee is discharged for reporting illegal acts of his employer to the employer or anyone else. *Hust v. Forrest Gen. Hosp.,* 762 So. 2d 298, 301 (Miss. 2000). The Mississippi Supreme Court has recognized that this exception is based on "an employer's duty not to thwart the public interest by terminating employees for

3

speaking the truth." *Galle v. Isle of Capri Casinos, Inc.,* 180 So. 3d 619, 622 (Miss. 2015).

For the McArn exception to apply, the acts complained of must "warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes of Miss., Inc.,* 907 So. 2d 357, 360 (Miss. App. 2004). Plaintiff's allegations in this case satisfy this requirement. Plaintiff has specifically alleged that Rust College was "fraudulently misusing federal funds provided to the TRIO program" and that her termination constituted "criminal fraud against the United States." These allegations go beyond mere regulatory non-compliance and implicate potential criminal fraud against the federal government.

The fraudulent misuse of federal funds can constitute a criminal offense under federal law. 18 USCS § 287. Plaintiff's allegations of unauthorized changes to budget documents, misrepresentations of TRIO's federal obligations, and misuse of federal funds all point to potential criminal violations, not merely civil regulatory infractions.

This case is distinguishable from *Howell v. Operations Mgmt. Int'l, Inc.,* as Plaintiff here has specifically alleged fraudulent misuse of federal funds, which can constitute criminal fraud. 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001). The allegations in this case are not limited to regulatory non-compliance but extend to potentially criminal misappropriation of federal funds.

**B. FCA Retaliation Claim**

To establish a claim for retaliation under the False Claims Act (FCA), a plaintiff must prove three elements: (1) the plaintiff engaged in protected activity; (2) the defendant knew the plaintiff engaged in protected activity; and (3) the plaintiff suffered retaliation because of the protected activity. *N.Y. ex rel. Khurana v. Spherion Corp.,* 511

Supp. 3d 455, 472 (S.D.N.Y 2021) The legislative history of the FCA makes clear that a whistleblower must show the employer had knowledge the employee engaged in protected activity. *Schuhardt v. Wash. Univ.,* 390 F.3d 563, 568 (8th Cir. 2004). A plaintiff must show the employer had actual or constructive knowledge of the protected activity to establish a prima facie case of retaliation. *Id.*

The FCA's anti-retaliation provision protects employees who engage in lawful acts in furtherance of an action under the FCA or other efforts to stop violations of the FCA. 31 USCS § 3730(h). The statute provides a non-exhaustive list of examples of retaliation, including "discharge[], demot[ion], suspen[sion], threat[s, and] harass[ment]." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.,* 816 F.3d 315, 326 (5th Cir. 2016). Protected activity under the FCA includes internal reports concerning false or fraudulent claims for payment submitted to the government. *United States ex rel. Patton v. Shaw Servs., L.L.C.,* 418 F. App'x 366, 372 (5th Cir. 2011). An employee need not have filed an FCA lawsuit or developed a winning claim at the time of the alleged retaliation to engage in protected activity.

Plaintiff's allegations go beyond mere regulatory non-compliance and are sufficient to establish protected activity under the FCA. The Amended Complaint specifically alleges that Plaintiff "suspected the Defendant Rust College was fraudulently misusing federal funds provided to the TRIO program." This allegation directly implicates the type of fraudulent activity that the FCA was designed to prevent. Unlike cases where plaintiffs' complaints were limited to operational or safety concerns without any suggestion of fraud against the government, Plaintiff here has explicitly alleged "fraudulent misuse of federal funds." This is significant because the FCA is concerned with fraud against the government, not merely regulatory violations.

5

If a plaintiff's allegations fall short of reaching a nexus with a viable FCA action, then the plaintiff has not, as a matter of law, engaged in protected activity. *Fakorede v. Mid-South Heart Ctr., P.C.*, 182 F. Supp. 3d 841, 851 (W.D. Tenn. 2016). However, an employee who complains about internal wrongdoing that could reasonably be a violation of the FCA and could lead to a viable FCA action may have engaged in protected activity. *Id.* Plaintiff's allegations regarding fraudulent misuse of federal funds establish this nexus.

Plaintiff has alleged facts that, if proven, could establish that Defendants were on notice of protected activity. Specifically, Plaintiff alleges that the individuals she reported to "knew that such fraudulent misuse of federal funds was a violation of the False Claims Act" and "knew that Plaintiff's complaints of this misuse of federal funds was a complaint for violation of the False Claims Act." [Doc. 17 at p. 3]. These allegations directly address the notice requirement. The employer must be on notice that the employee is investigating fraud. *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 607 (S.D. Tex. 2012). Notice can be accomplished by expressly stating an intention to bring a qui tam suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility. *Id.* at 608.

Plaintiff's termination constitutes a materially adverse action under the FCA's anti-retaliation provision. The Fifth Circuit has held that a retaliatory act must be "materially adverse, which. means it well might have dissuaded a reasonable worker from" engaging in protected activity. *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 326 (5th Cir. 2016). Termination represents "the ultimate action that an employer can take against a reasonable worker for whistleblowing." *United States ex*

6

*rel. Grant v. United Airlines Inc.,* 912 F.3d 190, 202 (4th Cir. 2018). Courts have recognized that the timing of adverse actions, such as termination "following close on the heels of numerous complaints," can support a finding of retaliation. *Id.* This principle applies to Plaintiff's case, where her termination followed her reports of fraudulent misuse of federal funds.

### C. Tortious Interference With Employment Claim.

To prove tortious interference, a plaintiff must prove that a defendant committed (1) "intentional and willful" acts; (2) "calculated to cause damages to the plaintiff in his lawful business;" (3) the acts "were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and" (4) "actual loss occurred." *See McKlemurry v. Thomas*, 2011 U.S. Dist. LEXIS 92623 *24-27 (S.D. Miss. August 17, 2011) (citing *Levens v. Campbell*, 733 So.2d 753, 760-1 (Miss 1999).

The Mississippi Supreme Court has recognized that "a claim for tortious interference with at-will contracts of employment is viable in [Mississippi]." *Vaughan v. Carlock Nissan of Tupelo, Inc.*, 553 Fed. Appx. 438, 444 (5th Cir. 2014) (quoting *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999). However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So. 2d 247, 254-55 (Miss. 1985).

Defendant may claim there was no bad faith as Plaintiff has not provided evidence of malice to show bad faith; however, that would be a misunderstanding of the requirements for the claim. "Malice in law is not necessarily personal hate or ill will, but it is the intent, without justification or excuse, to commit a wrongful act." *Harmon v. Regions Bank*, 961 So. 2d 693, 699 (Miss. 2007) (citation omitted).

Defendants contend that Plaintiff has failed to plead the existence of a formal written employment contract that can be interfered with. However, this argument misunderstands Mississippi law regarding tortious interference claims in the employment context. Mississippi law clearly recognizes that tortious interference with at-will contracts of employment is a viable claim. *Watkins v. Oakes,* 318 So. 3d 1125, 1129 (Miss. App. 2020). The Mississippi Supreme Court has specifically held that an employment relationship itself can constitute an enforceable obligation sufficient to support a tortious interference claim. In *Levens v. Campbell*, the court held that "it is clear from the facts that an employment relationship was formed, or at the very least contemplated to the extent that a third party could tortiously interfere." Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999).

Here, Plaintiff has alleged that she was hired by Rust College on January 9, 2023, as Project Director for federally funded TRIO Upward Bound programs and was later promoted to Executive Director. This clearly establishes an employment relationship between Plaintiff and Rust College that is sufficient under Mississippi law to support a tortious interference claim.

Defendants argue that as an agent of Rust College, Dr. Harpe is privileged from tortious interference claims. While Mississippi law does recognize a privilege for agents acting on behalf of their principals, this privilege is not absolute. Mississippi courts have held that "an agent acting on behalf of the principal is privileged from tortious interference unless acting in bad faith." Cromwell v. Williams, 333 So. 3d 877 n. 2 (Miss. App. 2022). The Mississippi Supreme Court has clarified that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third

8

person." *Springer v. Ausbern Constr. Co.,* 231 So. 3d 1065, 1068 (Miss. App. 2016). This means that regardless of whether the third element of "without right or justifiable cause" is satisfied, the Mississippi Supreme Court requires a review for bad faith when determining if an employee/agent can be sued for tortious interference of a contract between the employer/principal and another. Cromwell v. Williams, 333 So. 3d 877, 886 (Miss. App. 2022).

Plaintiff has alleged several facts that, if proven, could establish bad faith by Dr. Harpe, thereby removing him from the protection of the agency privilege. First, the timing of Dr. Harpe's recommendation for Plaintiff's termination is highly suspicious. According to the Amended Complaint, Dr. Harpe sent his letter recommending termination on May 20, 2025, the same day that Plaintiff emailed Trustee Ward about her concerns regarding potential violations of federal grant regulations. This temporal proximity strongly suggests a retaliatory motive.

Second, Plaintiff alleges that Dr. Harpe "falsely claimed that Plaintiff had mismanaged federal funds" in his recommendation for termination. [Doc. 17 at p. 5]. If proven, this allegation would demonstrate that Dr. Harpe acted with dishonesty and deception, which are hallmarks of bad faith.

Third, the alleged retaliatory nature of Dr. Harpe's actions in response to Plaintiff's protected activity further supports a finding of bad faith. Courts have recognized that retaliation against an employee for reporting illegal acts constitutes an exception to the employment-at-will doctrine. *Pub. Serv. Comm'n of Yazoo City v. Wright,* 391 So. 3d 1161 (Miss. 2024), *McArn v. Allied Bruce-Terminix Co., 626 So. 2d 603* (Miss. 1993).

### III. CONCLUSION

9

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

THIS the 11th day of Defendant, 2025.

> Respectfully submitted,
>
> s/ Nick Norris
> NICK NORRIS (MB# 101574)
> Attorney for Plaintiff

OF COUNSEL:

NICK NORRIS, P.A.
272 Calhoun Station Parkway
Suite C #13
Gluckstadt, MS 39110
(601) 641-4897
nick@nicknorris.law

## **CERTIFICATE OF SERVICE**

I, Nick Norris, attorney for Plaintiff, do hereby certify that I have this day served a true and correct copy of the above and foregoing pleading via ECF filing or by United States Mail with postage fully prepaid thereon to all counsel of record.

SO CERTIFIED, this the 11th day of December, 2025.

> s/ Nick Norris
> NICK NORRIS